# Wytheville.

SMITH v. SMITH'S EXECUTOR AND OTHERS.

June 13, 1907.

1. INFANTS—*Marriage Settlements—Disaffirmance.*—If an infant *feme,* upon the eve of her marriage, unites with her intended husband in settling her real estate upon herself and the contemplated issue of such marriage, the act is voidable, and can be disaffirmed by her, when the disabilities of infancy and coverture have been removed, where she has, in the meantime, done no act to ratify or affirm such settlement. *Tabb* v. *Archer,* 3 Hen. & M. 399 is disapproved so far as it conflicts with this case.

Appeal from a decree of the Circuit Court of Rappahannock county. Decree for the defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

*Barbour & Rixey,* for the appellant.

*Grimsley & Miller, H. G. Moffett, James F. Strother,* and *R. Walton Moore,* for the defendants.

HARRISON, J., delivered the opinion of the Court.

It appears from the record of this case that Mary E. Smith, the appellant, formerly Mary E. O'Bannon, was born in September, 1857, and was married to Hugh M. Smith in October,

1874, just one month after her seventeenth birthday; that she was the only child of Walter O'Bannon, who died intestate in July, 1870, leaving a large real and personal estate, the real estate being situated in the counties of Culpeper and Madison; that Elizabeth F. O'Bannon, the mother of appellant, qualified as the administratrix of her deceased husband, Walter O'Bannon. It further appears that two days before the marriage of appellant her uncle, Jacob S. Eggborn, qualified as her guardian, and that on the day before her marriage, she, her intended husband, her guardian, and her mother, who was named as trustee, signed a deed of marriage settlement by which one-half of the real and personal estate derived by appellant from her father was conveyed to her mother, Elizabeth F. O'Bannon, to be held by her in trust for the sole and separate use of appellant during the intended coverture, and in the event such coverture should be terminated by the death of appellant, then the said trustee to hold the real and personal property mentioned in trust for the issue, if any, of said marriage, taking *per stirpes,* and if no issue, then in trust for the mother, Elizabeth F. O'Bannon; and in the event the coverture be terminated by the death of Hugh M. Smith, the intended husband, then the trustee named is to hold all the property mentioned in trust for the sole and separate use of appellant during her natural life, and after her death for the issue of the intended or any future marriage, taking *per stripes,* and upon the further trust, if the appellant should die without issue, then in trust for her mother, Elizabeth F. O'Bannon, the trustee, and upon the further trust, from and after the solemnization of the intended marriage, to sell, exchange and convey, by and with the concurrence in writing of appellant, all or any of the property conveyed, and invest the proceeds upon the same trusts as those set out and declared in the deed. It further appears that the provisions of this deed of settlement were never carried out in any particular, or regarded as binding by any of the parties thereto. So far as appears from the record, the paper was never seen

or mentioned until the year 1897, more than twenty years after its date, when it was accidently discovered in an old bundle of promiscuous papers, which was in the possession of Elizabeth F. O'Bannon, the trustee, who said, when asked what it was, that "it was an old contract drawn between Mollie and Hugh about the time of Mollie's marriage, but that they had gone on without it, and that it was never recognized or acted upon," winding up her remarks in regard to the paper with these words: "It ain't no account, I can tell you that." This view of the contract is confirmed by J. S. Eggborn, the guardian, who says: "It was certainly never carried out. I do not think it was ever regarded as anything either. And it was certainly never lived up to by any of them."

Some time in the year 1900, after the death of Hugh M. Smith, the husband, and Elizabeth F. O'Bannon, the trustee, and after dissension had arisen between the appellant and some of her children, this old deed of marriage settlement was secured by Walter O'B. Smith, a son of appellant, who claimed that it was a valid and binding instrument, and had it admitted to record in the county court clerk's office of Culpeper county.

Thereupon, the bill in this case was filed, in October, 1900, by the appellant, in which she sets forth substantially the facts already recited, and further alleges that the subject of a marriage contract was never mentioned in her presence until the day before her marriage, when she was presented with a paper and informed that it was necessary for her to sign it; that she never understood and was incapable of understanding it, and was told that it was a mere form; and that the provisions of the contract in question were greatly to her disadvantage, containing no provision whatever for a settlement on her from the estate of her husband, either present or prospective. It is further alleged that the contract in question was, from the time it was signed, treated as a nullity; that no part of the property mentioned therein was ever held or controlled by her mother, the trustee named in the deed; and that all of such real and

personal property was turned over to the husband by her mother, who was the administratrix of her father's estate. The complainant further alleges that, by reason of her infancy at the time of its execution, the marriage contract under consideration was either totally void or voidable at her election; that she has never recognized its validity; and prays that it may be declared null and void.

Two of the adult children of the appellant file a joint and separate answer, in which they disclaim any knowledge of the circumstances which led up to the marriage contract, but express their belief in the truth of the allegations of the bill, and unite in the prayer that the contract be declared null and void. W. O'B. Smith, an adult son, the executors of Hugh M. Smith, and the guardian *ad litem* of the infant children of appellant, file demurrers and answers denying the allegations of the bill and insisting upon the validity and binding force of the marriage contract sought to be avoided by the complainant.

The allegations of the bill, in all material particulars, are substantially sustained by the proof. The record shows that all that is left to appellant of the inheritance from her father is a part of the real estate; that the personal property and a large part of the real estate, which she united with him in conveying to purchasers, was consumed during her husband's lifetime. It further appears that the appellant, acting without regard to the marriage contract, both before and since her husband's death, has so dealt with her rights as to very largely impair them, if the marriage contract, which had passed from the knowledge and memory of all the parties concerned, were now upheld and enforced.

Laying aside all inquiry into the suggestions urged by appellant, as to the injustice of requiring her to abide by the settlement here involved, under the circumstances of this case, we come to a consideration of the clear-cut question, whether or not an infant female, who, on the eve of her marriage, unites with her intended husband, her guardian, and her mother, in

settling her maiden lands, through the intervention of a trustee, upon herself and the issue, if any, of her proposed marriage, can, after the disability of infancy and of coverture have been removed, disaffirm and annul such settlement, when she has in the meantime done no act to ratify or affirm the same.

At an early day in England, the disposition seemed to be to answer this question in the negative, upon the theory that infants may marry, and as incident to the contract of marriage can bind themselves by a settlement made in contemplation of such marriage. *Harvey* v. *Ashley,* 3 Atkyns 607; *Cannel* v. *Buckle,* 2 P. Wms. 243. It was not many years, however, until this view was abandoned, and the doctrine firmly established, that the real estate of a female infant was not bound by the settlement on her marriage, because her real estate does not, like personalty, become by the marriage the absolute property of the husband, although by the marriage he takes a limited interest in it. *Durnford* v. *Lane,* 1 Bro. C. C. 106; *Caruthers* v. *Caruthers,* 4 Brown's R. (Eden) 499; *Clough* v. *Clough,* 5 Ves. 710; *Milner* v. *Lord Harewood,* 18 Ves. Ch. R. 258.

In Schouler's Domestic Relations (5th ed.), sec. 399, the law of England, as it is now and has been for more than one hundred years, is stated as follows: "With respect to the marriage settlement of infants, there was formerly considerable controversy. For, on the one hand, it was urged that infants were, in general incapable of entering into valid contracts with respect to their property; on the other, that since infants might make a valid contract of marriage, they ought to be able to arrange the preliminaries. At an early period the opinion prevailed in England, that the marriage consideration communicated to the contract of infants, respecting their estate, an efficacy similar to that which the law stamps upon marriage itself; and Lords Hardwicke and Macclesfield contributed to strengthen it, by maintaining that the real estate of an infant would be bound by a marriage settlement. Lord Northington held later to a different opinion; and Lord Thurlow overturned

the doctrine altogether, boldly declaring that the contracts of
male and female infants do not bind their estates, and that
consequently a female infant cannot be bound by any articles
entered into during minority, as to her real estate; but may
refuse to be bound, and abide by the interest the law casts upon
her, which nothing but her own act, after the period of ma-
jority, can fetter or affect. Other distinguished equity jurists,
including Lord Eldon, subsequently expressed their approval
of Lord Thurlow's decision. And the rule became settled
within the next fifty years, that the real estate of a female
infant was not bound by the settlement on her marriage, be-
cause her real estate does not become, by the marriage, the
absolute property of the husband, although by the marriage he
takes a limited interest in it. So it was decided that neither
the approbation of the parents or guardians, not even of the
court of chancery, independently of positive statute, would
make the infant's settlement binding." After mentioning a
statute passed in England in 1855, authorizing infants, not
under a certain age, to make valid settlements, with the appro-
bation of the court of chancery, the learned author says: "But,
aside from the operation of such a statute, an infant who be-
comes a party to a marriage settlement may repudiate it within
a reasonable time after attaining majority." See also Wharton
on Contracts, sec. 73; Bishop's Law of Married Women, Vol. 2,
sec. 518.

In Addison on Contracts, Vol. 3, sec. 1365, p. 458, it is said:
"If the male party is of age, and the female party under age,
all the leasehold property and general personal estate of the
female infant comprised in the settlement will be bound there-
by, because such personal estate becomes, by the marriage, the
absolute property of the husband, and the settlement is, in
effect, a settlement by the intended husband of the property
he is about to acquire by the marriage; but the real estates of
inheritance of the female infant are not bound by the settle-
ment, as she has no power of disposition over them during her

minority. . . . If she survives the husband, her power over her real estate is the same as if no settlement had ever been made. If the husband survives, he holds such real property for his life, if he had issue by the wife, born during the coverture which might by possibility inherit the estate as her heirs; and on his death it descends to the wife's heir at law, whatever may be the terms and provisions of the settlement."

In 22 Cyc. 537, it is said: "An infant female may settle her personalty at marriage, for such settlement cannot be to her prejudice, but must be to her advantage if it secures anything to her or her issue, since, without the settlement, the whole would go to the husband absolutely on her marriage; but the weight of authority seems to support the view that she cannot bind herself by a settlement of her real estate on marriage, although such a settlement is usually considered voidable only and not void."

This subject has received but little judicial consideration in the United States. So far. however, as it has been dealt with by the courts, the decisions are generally of a like tenor with those of England. *Temple* v. *Hawley,* 1 Sandfords, Ch. R. (N. Y.) 153; *Levering* v. *Levering,* 3 Md. Ch. R. 365; *Lancaster* v. *Lancaster,* 13 Lea (Tenn.) 126; *Satterfield* v. *Riddick,* 8 Iredell's Eq. (N. C.) 265; *Shaw* v. *Boyd,* 5 Serg. & Rawl. (Pa.) 309, 9 Am. Dec. 368.

These authorities show that, for many years, the doctrine has prevailed both in England and in this country, that an infant female may settle her personalty at marriage, because such settlement cannot be to her prejudice, since, without the settlement, the whole would go to the husband on her marriage; but that she cannot bind herself by a settlement of her real estate on marriage, such a settlement being considered voidable by her. It may be remarked in this connection, without intending to express any opinion upon it, the question not arising in this case, that the reason given for the distinction between the real and personal estate of a female infant would seem to

have lost much of its force in Virginia, where, under the present married woman's law, her personal estate is substantially in the same position as her real estate.

We will now consider the cases in Virginia which have touched the question before us.

The first case, and the only one where the subject was involved, is that of *Tabb* v. *Archer* (1809), reported in 3 Hen. & .M. 399, 3 Am. Dec. 657.   There were two cases heard together and reported under the one title, both involving the marriage articles of daughters of Mrs. Tabb, one of whom married Dr. Archer, and the other Dr. Randolph. Dr. Archer's wife was an adult at the time of her marriage; Dr. Randolph's bride was an infant.   Both settlements involved real estate. The husbands and wives, in both cases, sought to invalidate the settlements by each husband uniting with his wife in conveying all of the settled property.   Dr. and Mrs. Randolph conveyed all of theirs to a trustee, who, the next day, re-conveyed it to Dr. Randolph absolutely.   The mother, Frances Tabb, as next friend to the infant issue of each, and in her own right, filed bills to set aside these conveyances.   Judge Tucker delivered the opinion in the Archer case, where no question of infancy was involved, holding the articles valid.   In his opinion he says:  "And although the rights of an infant, party to such an agreement, to real estate may not, perhaps, be bound by any agreement in relation to it, unless there be issue of the marriage (as there has been in this case), yet, as to personals, her interest may be bound by agreement on the marriage; and if the parents or guardian cannot contract for the infant, so as to bind that property, the husband as to the personal estate, would be entitled to the absolute property in it immediately on the marriage.   And Lord Hardwick said, he knew of no precedent where a marriage agreement had been called in question, where it had been made (as in that case), with consent of parents and guardians."

The first sentence quoted seems to recognize fully the dis-

tinction made in the authorities between real and personal property, a distinction fully recognized by Lord Hardwick in the early case of *Harvey* v. *Ashley, supra.*

Judge Roane, who seems to have dealt more particularly with the infant's case, disposes of the subject by saying: "In the first place, it is objected that Mrs. Randolph was an infant at the time of executing the agreement, which, therefore, shall not bind her. The answer is, that infants may marry, and, as essential thereto, may contract by means of marriage settlements." Citing *Harvey* v. *Ashley, supra,* and *Seamer* v. *Bingham,* 3 Atk. 54, two of the earliest of the English cases, already adverted to, the last of which had no bearing whatever on the subject dealt with. The learned judge made no reference to the then well-recognized distinction between real and personal estate. It cannot, however, be denied that the decision in *Tabb* v. *Archer* intended to, and was understood to, announce the principle, that marriage articles made between an infant *femme* and her intended husband, beneficial to her and her contemplated issue, were obligatory upon the parties, and would be enforced in a court of equity.

An important distinction between that case and the case at bar is in the fact that, in *Tabb* v. *Archer* the husband, while the wife was under the disability of coverture, was uniting with her to defeat the marriage settlement by means of conveyances vesting the whole property absolutely in him; while, in the case at bar the husband is dead, and the wife is proceeding, in her own right, to have annulled a contract made during her infancy.

It has long been a well settled doctrine that a court of equity will not permit the husband to aid the wife in defeating the marriage settlement and alienating or disposing of the property. Addison on Contracts, p. 458; *Lee and wife* v. *Stuart,* 2 Leigh 82; 21 Am. Dec. 599.

In the case last cited, which is the second in Virginia touching the subject under consideration, it appears that Ann

McCarty, an infant, prior to her marriage with Henry Lee, an adult, and in consideration thereof, conveyed to trustees all her lands and slaves for the use of herself and husband during their lives, and to the survivor, with remainder to their issue; and in 1822 Lee and wife exhibited their bill, among other things, to annul and avoid the marriage settlement between them in respect to the real estate thereby conveyed, upon the ground that it was executed by the wife while she was an infant. The decree was against them, the court saying: "There is no shadow of ground upon which a court of equity can set aside or declare the marriage settlement void, or lend its aid to assist the appellants in attaining their object in this respect. Lee was a party to the deed, and is bound by it; and no fraud or imposition on him being suggested, no court can, under any pretence, relieve him from the obligation of it. He covenanted with the trustee to execute any further conveyance, and otherwise to give full effect to the provisions of the settlement. The object of the present proceeding is to procure the aid of the court to enable him to violate that covenant. For the only purpose and effect of setting aside the deed of settlment,would be to enable his wife to dispose of the property for his benefit, or according to his pleasure, since she could make no disposition of it without his concurrence. So far from a court of equity assisting him to frustrate the settlement, it ought to interfere, if necessary, to prevent him from assisting her in defeating it. *Durnford* v. *Lane,* 1 Bro. C. C. 106; *Miller* v. *Harewood,* 18 Ves. 279."

In this case of *Lee* v. *Stuart,* the learned counsel for appellants argued that a deed of marriage settlement of land, made by an infant grantor, was of no binding effect whatever on the infant. Citing *Caruthers* v. *Caruthers, supra,* and *Clough* v. *Clough, supra.* If at that time *Tabb* v. *Archer* was considered as having settled the point that an infant *femme* could bind her real estate by marriage articles, it would seem that Mr. Stanard, the learned counsel who upheld the settle-

ment in this case, would have replied to this argument simply by citing and relying on it. This he did not do, but practically admitted the position taken by counsel for the appellants, saying: "The question is not whether the court may not, hereafter, when Mrs. Lee's coverture shall have determined, entertain a bill on her behalf to set aside this marriage settlement of her real estate, on account of the disability of infancy she lay under at the time she executed it, but whether the husband and wife, during the coverture—in other words, whether the husband, in the name of his wife, while she remains under a disability equal to that of infancy—shall be entertained to impeach the validity of the settlement, on the mere ground that the wife was disabled by reason of infancy to execute such a deed." He maintained further, that if the wife was disabled by infancy to execute the settlement, she was equally disabled by coverture to annul or avoid it. The whole argument of counsel, the opinion of the court, and the authorities cited, show very clearly, though the question at issue was not directly involved, that the mind of the bench and bar at that time were in harmony with the English doctrine as to the binding force of such settlements, and the conditions under which they could and could not be avoided.

The only other Virginia case which has been found, bearing on this subject, is *Healy* v. *Rowan,* 5 Gratt. 414, 52 Am. Dec. 94. In that case a marriage settlement was involved, which was held not binding upon the wife, upon the ground that the articles, which were entered into between her guardians and intended husband before marriage, and while she was an infant, had never been executed by her. In this case, Judge Baldwin, who delivered the opinion, said, that he perceived nothing to disapprove in the decision of the court in *Tabb* v. *Archer,* admitting afterwards that the principle there involved was not applicable to the case before him. Judge Allen united in the judgment of the court, expressly declining an opinion upon the question, whether it was competent for an infant to bind his

real estate by a marriage settlement, it not being necessary to the decision of the case. With great respect for the learning and ability of Judge Baldwin, this confessed dictum cannot be regarded as establishing a doctrine in Virginia which is contrary to the current of decisions and text-writers in England as well as the United States at large.

This review of the subject leads us to the conclusion, that, both upon reason and authority, when an infant *femme,* upon the eve of her marriage, unites with her husband in settling her real estate upon herself and the contemplated issue of such marriage, the act is voidable and can be disaffirmed by her, when the disabilities of infancy and coverture have been removed, where she has, in the meantime, done no act to ratify or affirm such settlement. To the extent that the decision in the case of *Tabb* v. *Archer, supra,* decided by this court in 1809, conflicts with the conclusion reached in this case, it is disapproved.

The appellant, being an infant when the settlement involved herein was made, and having done no act to affirm the same, and having proceeded to disaffirm it soon after her disability was removed and as soon as rights were claimed under it adverse to her interests, she is entitled, in accordance with the prayer of her bill, to a decree annulling the contract and deed of marriage settlement, dated October 20, 1874, in so far as it affects her right in and to the real estate mentioned therein. This conclusion makes it unnecessary to consider other assignments of error.

For these reasons the decrees complained of must be reversed and the cause remanded for further proceedings not in conflict with this opinion.

*Reversed.*